UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                   :

JOSE FUENTES,

                                   :      06 Civ. 05813 (PAC) (DF)

                Petitioner,

                                   :      **REPORT AND**

    -against-                         **RECOMMENDATION**

                                   :

SUPERINTENDENT ROBERT J. EBERT,

                                   :

                       Respondent.
------------------------------------------------------X

**TO THE HONORABLE PAUL A. CROTTY, U.S.D.J.:**

<u>**INTRODUCTION**</u>

     *Pro se* petitioner Jose Fuentes ("Petitioner"), seeking a writ of habeas corpus under

28 U.S.C. § 2254, challenges his 2001 conviction in the New York State Supreme Court, Bronx

County.  Upon a jury verdict, Petitioner was found guilty of Course of Sexual Conduct Against a

Child in the First Degree and was sentenced to an indeterminate term of imprisonment of nine to

18 years.  Petitioner is currently incarcerated at the Otisville Correctional Facility in Otisville,

New York.

     In his habeas petition, Petitioner pleads two grounds for relief.  First, Petitioner claims

that, by admitting two out-of-court declarations into evidence, the trial court violated the rule

against hearsay and Petitioner's right to confrontation.  (*See* Petition under 28 U.S.C. § 2254 for

Writ of Habeas Corpus by a Person in State Custody, dated July 17, 2006 ("Pet."), at ¶ 13 and

attachment thereto.)  Second, Petitioner claims that, in summation, the prosecutor made

improper comments that were so egregious that they deprived him of a fair trial.  (*See id.*)

     In response, Respondent argues that Petitioner's claim regarding the violation of his

constitutional right to confrontation was rejected by the state courts on an independent and

adequate state law ground (*i.e.,* that it was not properly preserved in the trial court) and that the claim is thus procedurally barred from habeas review.  (Affidavit in Opposition of Assistant District Attorney, Na Na Park, dated Dec. 18, 2006 ("Park Aff.") (Dkt. 6), at ¶ 8; Memorandum of Law in Support of Opposition to Petition for Writ of Habeas Corpus, dated Dec. 19, 2006 ("Resp. Mem.") (Dkt. 6), at 4.)  As to the second claim, Respondent argues that the prosecutor's comments in summation were appropriate and that, even if some were improper, any error was harmless in light of the trial court's corrective instructions and the strength of the evidence of Petitioner's guilt.  (*See* Resp. Mem. at 17-18.)

For the reasons set forth below, I recommend that the Petition be dismissed in its entirety.

## BACKGROUND

### A.     Factual Background

The following facts are summarized from the testimony and other evidence in the record of Petitioner's trial.  The victim of the crime was a child who will be referred to herein as "XV."[1]  Petitioner was the boyfriend of XV's mother, ALV, who lived on Morris Avenue in the Bronx.  (Tr. at 744, 767, 771.)[2]  On May 23, 1997, around the time of XV's seventh birthday, Petitioner went to XV's bed, where she slept next to her younger sister, and removed XV's clothes.  (*Id.* at 987-89, 992.)  According to XV's testimony, Petitioner engaged in various sexual acts with her.  (*Id.* at 988-89, 991-92.)  Around XV's ninth birthday, Petitioner again went to XV's bed, again engaged in sexual activity with her, and told her not to tell anyone about the encounters.  (*Id.* at 994-95, 998.)

---

[1]  Pursuant to Civil Rights Law § 50(b), the victim, her mother, father, and sister will be referred to herein as XV, ALV, JLV, and ASV, respectively.

[2]  "Tr." refers to the trial record.

2

Petitioner's sexual abuse continued to occur approximately 10 to 20 times a month.  (*Id.* at 1014.)  XV's younger sister, ASV, witnessed the sexual encounters.  (*Id.* at 1138.)  She recounted that Petitioner, the man she knew as her father, came to their bed at night, and did "things" to XV that were consistent with sexual abuse.  (*Id.* at 1121-22, 1124-25, 1138.)  XV never reported the abuse to her mother or sister because she feared punishment and did not think they would believe her.  (*Id.* at 1002-03, 1123.)[3]

The last time Petitioner abused XV was shortly before May 10, 2000; on that day, Petitioner assaulted XV's mother, ALV, punching her in the face and stomach.  (*Id.* at 770-76; 1004.)  ALV then took her two daughters and left the Bronx for Houston, where ALV's sister – the girls' aunt – lived.  (*Id.* at 784-85, 973-74.)  While in Houston, XV finally revealed the sexual abuse to her aunt.  (*Id.* at 976, 978, 1013, 1044, 1051.)  Upon learning of the abuse, the aunt called XV's father, JLV, and told him what had happened.  (*Id.* at 707-10, 719-20.)  JLV then traveled to Houston to meet with XV.  (*Id.*)  XV eventually returned to the Bronx with her mother and sister.  (*Id.* at 806, 810-12.)

In late May 2000, Lieutenant Doris Amador, of the Bronx District Attorney's Child Abuse Investigations Bureau, received a report from the New York State Child Abuse Hotline detailing allegations of sexual abuse concerning XV, but not naming Petitioner as the abuser.  (*Id.* at 430-31, 436-38.)  The "source of that report" was located in Houston.  (*Id.* at 437.)  During summation, the prosecutor attributed the involvement of the Bronx police directly to

---

[3]  According to a clinical psychologist specializing in the effects of sexual assault on children, XV's decision to delay disclosure of the abuse was a normal "pattern of behavior" for children who have been sexually abused in a family setting.  (Tr. at 1083-85, 1087.)

3

XV's aunt.  (*Id*. at 1337-38.)[4]  Based on further investigations of the allegations, Lieutenant

Amador spoke with XV and requested that XV receive a thorough medical examination.  (*Id*. at

442, 446-47.)  The examination revealed that XV's genital condition was consistent with

repeated sexual abuse.  (*Id*. at 881-84.)

B.   **Procedural History**

1.   **Trial and Sentencing**

After voir dire, the jury trial of this action commenced on June 21, 2001, in the Supreme

Court of the State of New York, Bronx Country, before the Honorable Barbara F. Newman,

J.S.C.  (Tr. at 397.)  Petitioner testified on his own behalf and denied all allegations of sexual

abuse.  (*Id*. at 1162-63, 1168-69.)  On August 9, 2001, a judgment was rendered, convicting

Petitioner of Course of Sexual Conduct Against a Child in the First Degree (N.Y. Penal Law

§ 130.75[a]).  Petitioner was sentenced to an indeterminate term of imprisonment of nine to 18

years.  (*See* Park Aff. ¶ 5.)

Two of the trial court's rulings during the trial are particularly relevant to this action.

First, the court allowed Lieutenant Amador to testify that she commenced her investigation upon

receiving a report from the New York State Child Abuse Hotline regarding allegations of XV's

sexual abuse,[5] and, second, the court allowed XV's father, JLV, to testify that he flew to Houston

because XV's aunt had informed him that XV had been abused.  (Tr. at 436-38, 707-08.)

Following general objections on hearsay grounds and an off-the-record bench conference, the

trial judge admitted both witnesses' testimony for purpose of demonstrating their "state of

---

[4] The prosecutor stated that "[the aunt] called the police in the Bronx."  (*Id*. at 1337.)

[5] Amador did not testify that Petitioner was named in the State Child Abuse Hotline report.  (Tr. at 437.)

4

mind." (Tr. at 436-37, 707-08.) With respect to JLV's testimony, the trial judge further instructed the jury that the statement in question was not being admitted for the truth of the matter asserted. (*Id*. at 707-08.)

Also pertinent to this action are remarks made by the prosecutor during his summation. Among other things, the prosecutor stated in summation that XV and her sister would always be victims (*id*. at 1297); suggested that defense counsel had stood too close to XV during cross-examination (*id*. at 1299); told the jury that, if a child victim's testimony could not be relied upon, "these people would never be punished" (*id*. at 1301); described witness interview procedures used by his office, although there was no evidence of those procedures in the record (*see id*. at 1302-03); characterized Petitioner as a "compulsive pedophile" with a "smug" expression (*id*. at 1306-07, 1313-14); asserted that it had been "in [Petitioner's] best interest to take the stand" (*id*. at 1312); told the jury that XV's pre-trial statements and grand jury testimony was consistent with her trial testimony (*id*. at 1319-20); informed the jury that there would have been "no conviction . . . [and] no justice" if XV's mother had fled the Bronx, preventing Petitioner from being brought to trial (*id*. at 1334); characterized XV's aunt as a "hero" for having filed the State Child Abuse Hotline report (*id*. at 1337-38); and asked the jury to use its verdict to start a societal "consensus" that the charged crime was unacceptable (*id*. at 1338). The trial judge struck several of the prosecutor's summation comments (*see, e.g., id*. at 1297), and instructed the jury that it could disregard attorney argument and should "entirely disregard" considerations "such as sympathy, vengeance or prejudice" in reaching a verdict (*id*. at 1345-46).

2.      **Direct Appeal** _____

On direct appeal to the Appellate Division, First Department, Petitioner, through assigned counsel, argued that:  (1) the trial court's introduction, over objection, of two out-of-court declarations violated the rule against hearsay, as well as Petitioner's right to confrontation, and (2) the prosecutor's "improper" summation arguments deprived Petitioner of a fair trial. (*See* Park Aff., Ex. 1 (Brief for Defendant-Appellate, dated Jan. 2005).)

On June 9, 2005, the Appellate Division unanimously affirmed Petitioner's conviction. With respect to Petitioner's first claim, the court held that, although "there was an insufficient basis for the admission of hearsay statements as background evidence explaining the course of events," the error was harmless because the "evidence did not suggest to the jury that the nontestifying declarants had relevant personal knowledge of the event in question, and there was overwhelming evidence of defendant's guilt, including the credible testimony of the victim and her sister, along with medical evidence of repeated penetration." *People v. Fuentes*, 19 A.D.3d 167, 168 (1st Dept. 2006).  The court additionally held that Petitioner's Confrontation Clause argument "was unpreserved . . . and unavailing." *Id*. (citation omitted).

With respect to Petitioner's second claim on appeal, the Appellate Division ruled that the prosecutor's summation, while including "several inappropriate comments," did not deprive Petitioner of a fair trial, as "the court's curative instructions were sufficient to prevent any prejudice." *Id*.  "In any event," the court noted, "were we to find any error, we would find it to be harmless in view of the overwhelming evidence of defendant's guilt." *Id*.

On July 5, 2005, Petitioner sought leave to appeal to the Court of Appeals, attaching to his application a copy of the briefs filed in the Appellate Division.  (*See* Letter to the Hon. Judith

Kaye from Peter Theis, Esq., dated July 5, 2005.)[6]  On July 21, 2005, in a follow-up submission, Petitioner made clear that, although his application for appeal was focused on the Appellate Division's denial of his prosecutorial misconduct claim, he was also seeking to appeal the denial of his claim that, by admitting two out-of-court declarations into evidence, the trial court had violated the rule against hearsay and Petitioner's right to confrontation.  (*See* Letter to the Hon. Victoria A. Graffeo from Peter Theis, Esq., dated July 21, 2005 ("July 21 Letter").)[7]

On August 31, 2005, Petitioner's application for leave to appeal to the New York Court of Appeals was denied.  *See People v. Fuentes*, 5 N.Y.3d 806 (2005).

### 3. Habeas Petition

Proceeding *pro se*, Petitioner timely filed his federal habeas petition on July 18, 2006.[8] The petition raises the same two claims that Petitioner raised on direct appeal, *i.e.*, (1) that, by erroneously allowing testimony regarding two out-of-court statements, the trial court violated the rule against hearsay and deprived Petitioner of his constitutional right to confront witnesses, and (2) that, as a result of the prosecutor's improper comments during summation, Petitioner was

_____

[6] With his opposition to Petitioner's habeas petition, Respondent did not initially submit to this Court a copy of Petitioner's letter seeking leave to appeal to the New York Court of Appeals, but Respondent subsequently furnished a copy of that letter, together with a copy of a follow-up letter, setting forth the basis of the requested appeal.

[7] *See* n.6, *supra*.

[8] Although the Court's docket reflects a filing date of Aug. 1, 2006 (*see* Dkt. 1), a *pro se* prisoner's papers are deemed filed when they are handed over to prison officials for forwarding to the court, *see Houston v. Lack*, 487 U.S. 266, 270 (1988), and this Court will therefore deem the petition to have been filed on July 18, 2006, the date when petitioner declared under penalty of perjury that he delivered the petition to prison authorities to be mailed to the Court.  *See, e.g.*, *Rhodes v. Senkowski*, 82 F. Supp. 2d 160, 165 (S.D.N.Y. 2000).  The petition is timely, as it was filed within one year of the date (Aug. 31, 2005) when petitioner's conviction became final for purposes of habeas review, *i.e.,* 90 days after the Court of Appeals denied petitioner's application for leave to appeal.  28 U.S.C. § 2244(d)(1)(A).

deprived of his right to a fair trial.  (*See* Pet. ¶ 13.)  Petitioner, in fact, sets out no specific

allegations in his petition; for his two claims, he merely copies the point headings from his

appellate brief.  (*Compare* Pet. ¶ 13 *with* Park Aff., Ex. 1, at i.)

On December 18, 2006, Respondent opposed the petition by filing an Affidavit in

Opposition and exhibits thereto, together with a memorandum of law and a transcript of the state

court proceedings.  (*See* Park Aff.; Resp. Mem.)

<hr>

## DISCUSSION

## I.   APPLICABLE LEGAL STANDARDS

### A.   Exhaustion

A federal court may not consider a petition for habeas corpus unless the petitioner has

exhausted all state judicial remedies.  *See* 28 U.S.C. § 2254(b)(1)(A); *see also Picard v. Connor*,

404 U.S. 270, 275 (1971); *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997).  To satisfy the

exhaustion requirement, a habeas petitioner must have "fairly presented" his claims to the state

courts, thereby affording those courts the "initial opportunity to pass upon and correct alleged

violations of . . . [the] prisoners' federal rights."  *Picard*, 404 U.S. at 275 (citation omitted).

The standards for presenting federal constitutional claims to state courts are not so

stringent as to require the recitation of "book and verse on the federal constitution."  *Id.* at 278

(citation omitted).  The state courts, however, must be "apprised of 'both the factual and the

legal premises of the claim [the petitioner] asserts in federal court.'"  *Jones v. Vacco*, 126 F.3d

408, 413 (2d Cir. 1997) (quoting *Daye v. Attorney Gen.*, 696 F.2d 186, 191 (2d Cir. 1982)

(*en banc*)) (alteration in original).  Petitioners can ensure that state courts are "alerted to the fact

that [they] are asserting claims under the United States Constitution," *Duncan v. Henry*, 513 U.S.

364, 365-66 (1995), by presenting their claims in a fashion demonstrating either

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) [an] assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) [an] allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye*, 696 F.2d at 194; *accord Jackson v. Edwards*, 404 F.3d 612, 618-19 (2d Cir. 2005); *see also Petrucelli v. Coombe*, 735 F.2d 684, 688 (2d Cir. 1984).  Once the state courts are apprised of the constitutional nature of a petitioner's claims, the exhaustion requirement is fulfilled when those claims have been presented to "the highest court of the pertinent state." *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994) (citing *Pesina v. Johnson*, 913 F.3d 53, 54 (2d Cir. 1990)), *cert. denied*, 514 U.S. 1054 (1995).

Here, Petitioner's habeas petition precisely mirrors the claims he included in his brief to the Appellate Division.  Further, the fair import of Petitioner's letter seeking leave to appeal to the New York Court of Appeals was that he was again seeking to raise the same claims.  (*See* July 21 Letter.)   Accordingly, it appears that Petitioner's claims are exhausted.[9]

## B.    Standard of Review

Where a federal constitutional claim has been adjudicated on the merits by the state court, this Court must accord substantial deference to the state court's decision under the standard of review dictated by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See* 28 U.S.C. § 2254(d); *see also Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001) (noting that "adjudicated on the merits" means "a decision finally resolving the parties' claims, with *res judicata* effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground").  The relevant section of AEDPA provides that

---

[9] *But see* n.11 and 12, *infra*.

> [a]n application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim – (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).  In addition, under AEDPA, where not manifestly unreasonable, a state

court's factual findings are presumed correct, and can only be overcome by "clear and

convincing evidence."  28 U.S.C. § 2254(e)(1).

Under AEDPA, a state court decision is "contrary to" clearly established federal law

where the state court either applies a rule that "contradicts the governing law" set forth in

Supreme Court precedent or "confronts a set of facts that are materially indistinguishable from a

[Supreme Court] decision" and arrives at a different result.[10]  *Williams*, 529 U.S. at 405-06.  An

"unreasonable application" of clearly established federal law occurs when the state court

identifies the correct governing legal principle, but unreasonably applies that principle to "a set

of facts different from those of the case in which the principle was announced."  *Lockyer v.*

*Andrade*, 538 U.S. 63, 73-76 (2003).  The state court's decision, however, "must have been more

than incorrect or erroneous" –  rather, "[t]he state court's application must have been

---

[10] The Supreme Court has emphasized that "clearly established Federal law" refers only to the "'holdings, as opposed to the dicta, [of the Supreme Court's] decisions as of the time of the relevant state-court decision.'"  *Carey v. Musladin*, 127 S.Ct. 649, 653 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)); *see also Rodriguez v. Miller*, 499 F.3d 136, 140 (2d Cir. 2007) ("*Musladin* admonishes courts to read the Supreme Court's holdings narrowly and to disregard as dicta for habeas purposes much of the underlying logic and rationale of the high court's decisions.").  Thus, a principle of constitutional law "grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court" cannot provide the basis for habeas relief.  *Id.* (citing *Musladin*).

'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (quoting *Williams*, 529 U.S. at 409).

## II.   PETITIONER'S CLAIMS

###      A.   Claims Related To the Trial Court's Admission of Out-of-Court Statements

As noted above, Petitioner pleads his habeas claims merely by copying the contents of the point headings of his appellate brief.  Liberally construed, Petitioner's first habeas claim suggests that the trial court deprived him of his right to a fair trial by erroneously admitting hearsay evidence.[11]  This first claim also raises an alleged Confrontation Clause violation.

### 1.   Alleged Admission of Hearsay

As to Petitioner's challenge to the trial court's admission of evidence that purportedly constituted hearsay, Petitioner's claim would not be cognizable on federal habeas review unless the trial court's evidentiary error so undermined the fairness of the trial as to violate Petitioner's constitutional right to due process.  *See Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983) ("Erroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus.  Rather, the writ would issue only where petitioner can show that the error deprived her of a fundamentally fair trial.") (citing

---

[11] Before the Appellate Division, Petitioner clearly argued that the trial court violated state law by admitting hearsay evidence, but – apart from citing the 14th Amendment in the point heading for this argument – Petitioner did not press a claim that the admission of this evidence violated his federal due process rights, nor is it clear that the Appellate Division considered such a claim.  (*See* Park Aff., Ex. 1, at 21-27; *Fuentes*, 19 A.D.3d at 168.)  Thus, there is some question as to whether Petitioner exhausted any *constitutional due process* claim that he may now be attempting to assert with respect to the trial court's evidentiary ruling.  This Court need not resolve this exhaustion issue, however, given that any such due process claim would fail, in any event, on the merits, for the reasons discussed herein.  *See* 28 U.S.C. § 1154(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

*Chambers v. Mississippi*, 410 U.S. 284, 302-03 (1973); *Smith v. Conway*, No. 06 Civ. 7674 (RMB)(KNF), 2007 U.S. Dist. LEXIS 89579, at *18-19 (S.D.N.Y. Dec. 6, 2007) (noting that, even if the trial court erroneously allowed hearsay evidence, the "evidentiary ruling. . . may provide a basis for habeas corpus relief only if [Petitioner] establishes that it so infused the trial with unfairness as to deny due process of law"(internal quotation marks and citation omitted)), *adopted by Smith v. Conway*, 2008 U.S. Dist. LEXIS 22750 (S.D.N.Y. Mar. 24, 2008).

On the record presented, it cannot be said that the trial court's admission of the challenged statements, even if evidentiary error, rendered Petitioner's trial constitutionally infirm, or that the Appellate Division was incorrect in holding that any such error was harmless. Neither of the statements directly implicated Petitioner, and the other evidence of his guilt – including testimony by both the victim of the crime and her sister, as well as corroborating medical evidence – was strong. *See Brown v. Breslin*, Nos. 02 CV 6044 (JBW), 03 Misc. 0066 (JBW), 2003 U.S. Dist. LEXIS 22468, at *19 (E.D.N.Y. Nov. 26, 2003) (habeas corpus relief, sought on the ground that trial court made an evidentiary error, was denied where evidence of Petitioner's guilt was strong and evidentiary error did not have a substantial and injurious effect on the trial) (internal quotation marks and citation omitted).  Accordingly, to the extent Petitioner is seeking to assert a due process claim grounded in the trial court's admission of hearsay statements, I recommend that any such claim be dismissed.

### 2.    Petitioner's Confrontation Clause Claim

Petitioner also appears to assert that his right to confrontation under the Sixth Amendment was violated when the trial court (1) allowed Lieutenant Amador to testify that she had started her investigation upon receiving a report from the New York State Child Abuse Hotline regarding the allegations of XV's sexual abuse, and (2) allowed XV's father, JLV, to

12

testify that XV's aunt had informed him that XV had been abused.  (Compare Pet. ¶ 13 with Park Aff., Ex. 1, at 18-33.)[12]  This Court is barred from reviewing this claim because the Appellate Division rejected it on an independent and adequate state law ground – specifically, on the ground that the claim was not preserved – and Petitioner has not shown a basis for overcoming the procedural bar.  *Fuentes*, 19 A.D.3d at 167.

### a.    The Claim Is Procedurally Barred

Federal habeas review of a claim is not available where the question has been decided by a state court, and the state court's decision "rests on a state law ground that is independent of the federal question and adequate to support the judgment."  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  The state law ground may be substantive or procedural.  *Id.*

In evaluating whether the state court has found a claim to be procedurally defaulted under state law, this Court must look to the last reasoned state court opinion.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("[W]here . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.").  To determine whether the state law ground on which the state court rested was "truly an *independent* basis for decision or merely a passing reference, such reliance on state law must be clear from the face of the opinion."  *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000) (emphasis added) (internal

---

[12] Although the point heading in Petitioner's Appellate Division brief raised a Confrontation Clause challenge with respect to both of the out-of-court statements at issue (*see* Park Aff., Ex. 1, at i), Petitioner then went on, in that brief, to focus his Confrontation Clause argument on the first of those two statements alone (*see id.* at 27-29).  Thus, Petitioner's Confrontation Clause claim as to the second out-of-court declaration is arguably unexhausted. Yet even assuming Petitioner's Confrontation Clause claim is fully exhausted, the claim would be subject to dismissal for the reasons discussed herein.

quotation marks and citation omitted); *see also Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997) (to preclude federal review, the state court "must 'clearly and expressly state[] that its judgment rest[ed] on a state procedural bar'") (citation omitted).  To be deemed *adequate*, the state procedural rule on which the court's decision was based must be a rule that is "firmly established and regularly followed" by the state in question, *see Ford v. Georgia*, 498 U.S. 411, 423-24 (1991), and must not have been "misapplied in [the petitioner's] case in particular," *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) (internal quotation marks and citation omitted).

Here, the last-reasoned state court decision is that of the Appellate Division, and it is clear from the face of that decision that Petitioner's Confrontation Clause claim was rejected on an "independent" state-law procedural ground.  *Fuentes*, 19 A.D.3d at 168.  Further, New York's preservation rule, requiring that parties raise specific contemporaneous objections to a trial court's rulings before challenging them on appeal, *see* N.Y.C.P.L. § 470.05(2), affords an "adequate" basis for the Appellate Division's decision.  *See generally, Garcia v. Lewis*, 188 F.3d 71, 79 (2d Cir. 1999); *Daye*, 696 F.2d at 192 (2d Cir. 1982); *Alvardo v. Burge*, No. 05 Civ. 1851 (AKH), 2006 U.S. Dist. LEXIS 46708, at *6 (S.D.N.Y. June 30, 2006) ("failure to object is not merely technical; the requirement of timely objection allows the trial court to consider potential errors and correct them in a timely fashion, when it most counts.").

Finally, there is no basis here for this Court to find that the state's preservation rule was inappropriately applied in this case, in particular.  *See Cotto*, 331 F.3d at 240.  At trial, Petitioner did not object to the testimony in question on Confrontation Clause grounds, raising what were apparently only hearsay objections, based on state evidentiary law.  (See Tr. at 437 ("[the report]'s hearsay"), 707-08 ("objection to what [the aunt] told [the father]").)  There is thus nothing in the record that suggests that the trial court had any opportunity to consider

14

Petitioner's specific claim that the court violated his constitutional right of confrontation.  *See People v. Kello*, 96 N.Y.2d 740, 744 (2001) (defendant's failure to raise a Confrontation Clause objection precluded the trial court and prosecution from considering and, thus, avoiding any constitutional error).  On this record, Petitioner's claim must be considered procedurally barred from federal habeas review.

### b.        Petitioner Has Not Overcome the Procedural Bar

Petitioner can overcome the procedural bar to this Court's review of his Confrontation Clause claim only if he can demonstrate "cause and prejudice for the default," *Gray v. Netherland*, 518 U.S. 152, 162 (1996) (citations omitted); or that "failure to consider the [defaulted] claim will result in a fundamental miscarriage of justice," *Coleman*, 501 U.S.at 750 (internal quotation marks and citations omitted).  In this instance, Petitioner has not satisfied either standard.

Generally, "cause" for a procedural default is established when "some objective factor external to the defense" impeded the petitioner's efforts to comply with the state's procedural rule.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also Ayuso v. Artuz*, No. 99 Civ. 12015 (AGS) (JCF), 2001 U.S. Dist. LEXIS 2504, at *25 (S.D.N.Y. Mar. 7, 2001).  More specifically, cause for a default exists where a petitioner can show that (1) "the factual or legal basis for a claim was not reasonably available to counsel," (2) "'some interference by state officials' made compliance [with the procedural rule] impracticable," or (3) "the procedural default is the result of ineffective assistance of counsel."  *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994) (citation omitted).  "Prejudice" requires Petitioner to demonstrate that the alleged constitutional error worked to Petitioner's "*actual* and substantial disadvantage."  *U.S. v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

15

Here, even viewed in the light most favorable to Petitioner, the petition fails to suggest any "cause" for Petitioner's failure to preserve his Confrontation Clause claim; he does not, for example, argue that his trial counsel was ineffective or that the trial court impeded his ability to register an objection on the record.  In the absence of cause for the procedural default, the Court need not address prejudice.  *See Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985) ("Since a petitioner who has procedurally defaulted in state court must show both cause and prejudice in order to obtain federal habeas review, we need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not [petitioner] showed prejudice.").

As noted above, the Court may also excuse a procedural default where the petitioner "can demonstrate a sufficient probability that our failure to review his federal claim will result in a fundamental miscarriage of justice." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Coleman*, 501 U.S. at 750).  This exception, however, is quite narrow; it is "concerned with actual as compared to legal innocence." *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).  Thus, to meet this standard, a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496.  "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner has not met this burden.  The evidence against him was strong, in that it included both direct testimony by the victim and her sister regarding Petitioner's repeated acts of abuse (*see* Tr. at 987-89, 992, 994-95, 1998, 1014, 1121-22, 1124-25, 1138), and medical evidence that was consistent with the prosecutor's case (*see id*. at 878-82).  More to the point,

16

Petitioner has not made any showing that he is actually innocent of the crime of which he was convicted.  Under the circumstances, Petitioner cannot overcome the procedural bar.  *See, e.g., Alvarado*, 2006 U.S. Dist. LEXIS 46708 at *6-7 (stating that the case was "not an extraordinary case" where a constitutional violation may have convicted an innocent person) (internal quotation marks and citation omitted).  Accordingly, I recommend that Petitioner's Confrontation Clause claim be dismissed.

        **B.**        **Petitioner's Prosecutorial Misconduct Claim**

As his second claim, Petitioner sets out a litany of challenges to the prosecutor's summation, again echoing his appellate brief, in which he claimed that he was denied a fair trial by "pervasive" misconduct by the prosecutor in summation.  (*Compare* Pet. ¶ 13 *with* Park Aff., Ex. 1, at 34, 37.)  As the Appellate Division rejected Petitioner's prosecutorial misconduct claim on the merits, *Fuentes*, 19 A.D.3d at 167, the claim is subject to review by this Court under the standard set forth in AEDPA, 28 U.S.C. § 2254(d).  Under that deferential standard, the claim should be denied.

        **1.**        **The Nature of the Challenged Statements**

Petitioner's challenges to the prosecutor's summation fall into a number of categories.

First, Petitioner argues that the prosecutor improperly and repeatedly appealed to the jury's sympathy, fears, and other emotions, by, *inter alia,* emphasizing that XV and her sister were young and would "always be . . . victim[s]" (*see* Park Aff., Ex. 1 at 38-39; Tr. at 1297-98; *see also id.* at 1299); by saying that XV was a "little girl . . . with the courage of a warrior" (*see* Park Aff., Ex. 1, at 46, Tr. at 1306) and that her sister, whom the prosecutor described as "a very young girl, a very small girl, just starting to understand things" would "one day. . . comprehend" what she had witnessed (*see* Park Aff., Ex. 1, at 38; Tr. at 1298, 1318); by urging the jury to

believe that, if child molesters could not be convicted based on the testimony of children, "they would never be punished" (Park Aff., Ex. 1, at 41-42; Tr. at 1301); by emphasizing the "vicious, violent, [and] heinous" nature of the crime and the fact that it had occurred "over and over and over and over again" (Park Aff., Ex. 1, at 53; Tr. at 1336); by asserting that "the most disgusting crime in society is the mutilation of the child's body and soul" (Park Aff., Ex. 1, at 57; Tr. at 1338); and by asking the jury, by its verdict, to "start [a] consensus . . . that such a crime is unacceptable" (Park Aff., Ex. 1, at 57; Tr. at 1338).

Second, Petitioner complains that, in a variety of ways, the prosecutor improperly sought to bolster XV's trial testimony. In this regard, Petitioner argues that the prosecutor improperly informed the jury that XV's testimony was consistent with her pre-trial statements and her testimony before the grand jury. (*See* Park Aff., Ex. 1, at 48-51; Tr. at 1318-20.) Petitioner also points to the fact that, during summation, the prosecutor effectively gave personal testimony – as an unsworn witness – regarding the propriety of the witness interview procedures employed by the District Attorney's office to "bring these types of men before [a jury]," including the procedures used to help children recall events. (Park Aff., Ex. 1, at 43-44; Tr. at 1303.) Further, Petitioner argues that the prosecutor improperly implied a personal belief in Petitioner's guilt, when he stated that, had XV's mother fled with her children as she might have originally intended, there would be "[n]o conviction in the Bronx, no justice" (Park Aff., Ex. 1, at 52-53; Tr. at 1334).

Third, Petitioner complains that the prosecutor denigrated the defense and disparaged Petitioner and his counsel, by calling Petitioner a "child molester" and a "compulsive pedophile" (*see* Park Aff., Ex. 1, at 41-42, 46-47; Tr. at 1300-01, 1307); by remarking on Petitioner's supposedly "smug look" (*see* Park Aff., Ex. 1, at 48; Tr. at 1314); by suggesting that Petitioner's

18

counsel had sought to intimidate XV by standing too close to her during her cross-examination (*see* Park Aff., Ex. 1, at 40-41; Tr. at 1299); by implying that Petitioner's counsel had sought to impede the testimony of XV's mother by raising too many objections (*see* Park Aff., Ex. 1, at 54; Tr. at 1337); and by mocking the defense theories (*see* Park Aff., Ex. 1, at 51-52; Tr. at 1330, 1339).  Petitioner also contends that the prosecutor disparaged Petitioner's right to testify, by telling the jury that, given the strength of the evidence against him, Petitioner "had to take the stand" (*see* Park Aff., Ex. 1, at 47-48; Tr. at 1312).

Fourth, Petitioner argues that, in summation, the prosecutor improperly referred to evidence outside the record, including hearsay evidence.  In that regard, Petitioner complains that the prosecutor not only told the jury that XV's aunt had called the police in the Bronx, but also implied that the aunt had accused Petitioner, when the prosecutor had not been permitted to introduce evidence at trial of any such accusation.  (*See* Park Aff., Ex. 1, at 55; Tr. at 1338-39.) Beyond that, Petitioner challenges the degree to which the prosecutor praised XV's aunt for her actions in reporting the alleged abuse, calling her a "hero" who had done a "great deed" and arguing that she was credible – even though she never took the stand at trial.  (*See* Park Aff., Ex. 1, at 54-56; Tr. at 1338-39.)  Petitioner also argues that the prosecutor introduced evidence outside the record by, *inter alia,* explaining what XV had said or done in interviews by the District Attorney's office and others prior to trial (*see* Park Aff., Ex. 1, at 48-50; Tr. at 1318-20); by telling the jury, without having introduced any expert testimony on the subject, that XV would remain a victim "for the rest of her life" (Park Aff., Ex. 1, at 38; Tr. at 1297); by suggesting that XV's mother had not placed the interest of her children "first," in that she had "refused to take them to a clinic in Houston and the aunt had to take them," when XV's mother had not so testified (*see* Park Aff., Ex. 1, at 52; Tr. at 1332); and by informing the jury that the

aunt had told XV's mother to "'take these kids to the clinic now,'" when there was no such testimony in the record (*see* Park Aff., Ex. 1, at 53-54; Tr. at 1336).

2.    <strong><u>Review of the Appellate Division's Decision</u></strong>

A prosecutor is given wide latitude in summation.  *United States v. Casamento*, 887 F.2d 1141, 1188 (2d Cir. 1989), *cert. denied*, 493 U.S. 1081 (1990); *People v. Galloway*, 54 N.Y.2d 396, 399 (1981).  It is proper for a prosecutor to comment upon evidence presented at trial and to urge the jury to draw reasonable inferences from that evidence.  *See United States v. Roldan-Zapata*, 916 F.2d 795, 807 (2d Cir. 1990), *cert. denied*, 499 U.S. 940 (1991); *People v. Bailey*, 58 N.Y.2d 272, 277 (1983).  Even when a prosecutor has made improper comments in summation, however, habeas relief is not warranted merely because those comments "were undesirable or even universally condemned."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks omitted).  Rather, the question for this Court is whether undesirable remarks rendered the trial, as a whole, "fundamentally unfair."  *See id.* at 181-82.

Thus, to be entitled to habeas relief, a petitioner must show "that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict."  *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994), *cert. denied*, 516 U.S. 1152 (1996); *see also Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974) (habeas relief warranted only where prosecution's claimed misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process"). In assessing whether a prosecutor's improper statements rise to the level of a constitutional violation, this Court should consider three factors:  "the severity of the misconduct, the measures adopted to cure it, and the certainty of conviction in the absence of the misconduct."  *United States v. Melendez*, 57 F.3d 238, 241 (2d Cir. 1995) ( (internal quotation marks and citations

20

omitted)); *accord Bentley,* 41 F.3d at 823; *Gonzalez v. Sullivan,* 934 F.2d 419, 424 (2d Cir. 1991).

In this case, a number of remarks made by the prosecutor were inappropriate.  Some of the challenged remarks, however, were not objected to by Petitioner at trial.  (*See, e.g.,* Tr. at 1298, 1299, 1302-03, 1338 (no objections to statements by prosecutor that XV and her sisters would always be victims, to comment regarding where and how Petitioner's counsel was standing during the cross-examination of XV, to description of the District Attorney's office procedures for interviewing witnesses, or to description of the charged crime as "the most heinous, the most vicious, the most disgusting crime in society").)  This not only calls into question whether the challenges were preserved, but also weakens Petitioner's position that the comments were so egregious as to deprive him of a constitutionally fair trial.  *See Fowle v. Smith,* No. 85 Civ. 7311 (CBM), 1986 U.S. Dist. LEXIS 20288, at *5 (S.D.N.Y. Sept. 17, 1987) (finding petitioner's due process claim to be "weakened by defense counsel's failure to contemporaneously object to the prosecutor's comments during trial").

Further, many of the prosecutor's comments, even if improper, were invited by defense counsel's argument.  For example, in commencing his own summation, Petitioner's counsel questioned why XV's prior statements to Lieutenant Amador had not been video- or audio-taped (Tr. at 1276), thereby suggesting that the earlier statements may have been inconsistent with XV's trial testimony.  Petitioner's counsel also questioned whether the "proper" interview procedure had been used by the District Attorney's office, arguing that a failure to follow proper procedures should give rise to "reasonable doubt."  (*Id.*)  These arguments invited a response by the prosecutor regarding the consistency of XV's prior statements and the propriety of the District Attorney's procedures.  *See United States v. Young*, 470 U.S. 1, 12-13 (1985) (in

assessing a claim of prosecutorial misconduct, "the reviewing court must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo").

Moreover, Petitioner's counsel challenged XV's credibility at length in his summation, asking the jury if it believed XV was "completely truthful . . . unrehearsed . . . not choreographed . . . not prepared?" (Tr. at 1286.) Specifically, Petitioner's counsel asked, "Do you believe the words coming out of her mouth and some of the words she used were her own words or maybe put there, prepared so that she would testify in a certain way?" (*Id.*) Counsel also challenged the credibility of XV's testimony that she had been abused by Petitioner "repeatedly over a period of seven years," yet had not told anyone of the abuse for that entire period of time. (*Id.* at 1287, 1290; *see also id.* at 1293 ("Is this girl making it up? Is it a soap opera or is it real?").) These remarks invited a response that suggested that, rather than being dishonest or coached, XV had been victimized for an extended period of time and was showing courage at trial by coming forward to testify to the seriousness of the sexual abuse she had suffered.

Indeed, given the nature and extent of XV's abuse, as described by her at trial, the prosecutor's characterization of the crime as "heinous" and his description of Petitioner as a "compulsive pedophile" were fair comments on the evidence, or at least were not unduly inflammatory. *See, e.g., Garcia v. Greiner*, No. 01-CV-2470 (JG), 2004 U.S. Dist. LEXIS 7343, at *19-20 (E.D.N.Y. Apr. 28, 2004) (prosecutor's statement that a crime was "one of the most brutal, horrendous crimes imaginable" was "not constitutionally troublesome," where the evidence established the brutality of the crime); *Johnson v. Ercole*, No. 05-CV-3563 (DLI)(LB), 2007 U.S. Dist. LEXIS 17472, at *11 (E.D.N.Y. Mar. 13, 2007) (prosecutor's comments, which

allegedly aroused sympathy for the victim, inflamed the emotions of the jury and demonized the petitioner, were "not so egregious as to infect the trial with unfairness").

The prosecutor was also entitled to ask the jury to consider Petitioner's demeanor during trial, and thus the prosecutor's description of Petitioner as having a "smug look" did not render the trial unfair. *See Cooper v. Fischer*, Nos. 01-CV-2300, 03-MISC-0066, 2003 U.S. Dist. LEXIS 23869, at *38 (E.D.N.Y. Oct. 20, 2003) (prosecutor's question to petitioner of "what he thought was so funny during the victim's testimony" was permissible as a mere "rhetorical flourish," as prosecutor "was pointing out what the jurors undoubtedly had seen for themselves when the victim had testified:  that petitioner was smiling during that testimony").  Similarly, the prosecutor did not engage in misconduct by pointing out the physical stance taken by Petitioner's counsel during his cross-examination of XV, as the jury could consider all the circumstances of her testimony in determining whether she was a credible witness.

Moreover, apart from whether each of the challenged comments could be viewed as "invited" by Petitioner or fair comment on the evidence, it should be noted that the trial court sustained many of Petitioner's objections to the prosecutor's summation, struck several offensive comments from the record (*see, e.g.,* Tr. at 1300, 1301, 1307, 1312, 1336, 1337), and reminded the jury throughout the summation that it was "the jury's recollection of the testimony that controls" (id. at 1308, 1311, 1332, 1336, 1337).  The summation must be viewed in the full "context of the trial," *Young*, 470 U.S. at 12, and in conjunction with the trial court's rulings and instructions, *see Bentley*, 41 F.3d at 824 (in assessing whether actual prejudice suffered, court should consider any steps taken by the trial court to remedy any prejudice).  When, in this case, the prosecutor remarked that Petitioner "had to take the stand," posing a risk of confusing the jury as to Petitioner's constitutional rights, the trial judge not only sustained an objection, but

immediately instructed the jury that Petitioner had "no obligation whatsoever to testify, ha[d] no obligation to do anything whatsoever." (Tr. at 1312.)  The court also specifically pointed out to the jury that certain facts suggested by the prosecutor were outside the record.  (*See id.* at 1336 (sustaining objections to the prosecutor's comments about XV's aunt, and telling the jury that there was "[n]o such testimony"); *see also id.* at 1337 (sustaining an objection on the ground that the aunt "didn't testify").)

The court also gave the jury a general instruction that it could disregard entirely "any argument or conclusion advanced by [counsel that] . . . "was not based on the evidence or that . . . was not reasonable or not logical or [was] inconsistent with the evidence as you recall the evidence." (*Id.* at 1345.)  Further, the court instructed the jury that "sympathy, vengeance or prejudice or bias of any kind, must be entirely disregarded by you." (*Id*. at 1346.)  The jury is presumed to follow the trial court's instructions, and the court's curative measures here served to ameliorate any prejudice to Petitioner resulting from any improprieties in the prosecutor's summation.  *See*, *e.g. Donnelly*, 416 U.S. at 644 (noting trial court's actions to correct an impression that jury could consider prosecutor's statements as evidence); *Brown v. Senkowski*, Nos. 97 Civ. 3862, 97 Civ. 4415 (MBM), 2004 U.S. Dist. LEXIS 25643, at *41 (S.D.N.Y. Jan. 21, 2005) (petitioner was not deprived of a fair trial where, *inter alia*, the trial court instructed the jury that the summations were not evidence).

Finally, the strength of the evidence against Petitioner militates against any finding that the prosecutor's remarks in summation, even if inappropriate, caused Petitioner actual prejudice. "[I]f proof of guilt is strong, then the prejudicial effect of the [prosecutor's improper] comments tends to be deemed insubstantial" *United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981) (per curiam).  Here, the prosecution introduced cogent testimony by both the victim and her

24

sister and medical records corroborating the alleged sexual abuse.  In fact, a good deal of the

prosecutor's summation, not mentioned by Petitioner, was devoted to recounting, in detail, the

extensive inculpatory testimonial and medical evidence.  (*See, e.g.,* Tr. at 1316-18, 1325-29.)

Given this evidence, it is likely that the jury would have convicted Petitioner, regardless of the

prosecutor's challenged remarks.  Under the circumstances, Petitioner cannot show that the

claimed prosecutorial misconduct had a "substantial and injurious effect" on the jury's verdict.

*Bentley*, 41 F.3d at 824; *see also Bradley v. Meachum,* 918 F.2d 338, 343 (2d Cir. 1990) ("The

clear evidence of guilt demonstrates that [petitioner] was not prejudiced by the prosecutor's

improper remarks."); *Rodriguez v. Herbert*, No. 02 Civ. 895 (JG), 2004 U.S. Dist. LEXIS 8982,

at *31 (E.D.N.Y.  May 20, 2004) (petitioner's habeas claim did not justify issuance of a writ

where evidence established "certainty of conviction absent any improprieties in the prosecutor's

summation").

        Under AEDPA, the question for this Court is whether the Appellate Division's rejection

of Petitioner's prosecutorial misconduct claim was "contrary to" or an "unreasonable application

of" clearly established federal law.  28 U.S.C. § 2254(d); *see Musladin*, 127 S.Ct. at 654.  When

viewed in its entirety and in context, and in light of the trial court's instructions and strength of

the prosecution's evidence, the prosecutor's summation in this case did not "so infect[] the trial

with unfairness as to make the resulting conviction a denial of due process."  *Darden.* 477 U.S.

at 181.  As there is therefore no basis for this Court to find that the Appellate Division erred or

unreasonably applied the law, habeas relief on this claim would not be warranted.  *See, e.g.,*

*Player v. Artus*, No. 06 CV 2764 (JG), 2007 U.S. Dist. LEXIS 15792, at *29-30 (E.D.N.Y.

Mar. 6, 2007) (although the "prosecutor's comments were at times unnecessarily inflammatory,"

any injurious effect was ameliorated by the court's instructions and, in any event, comments

were "not so egregious as to support a finding that the Appellate division's rejection of this claim was an unreasonable application of clearly established federal law").

For all these reasons, I recommend that Petitioner's prosecutorial misconduct claim be dismissed.

## CONCLUSION

For the foregoing reasons, I recommend that Petitioner's petition for a writ of habeas corpus be DISMISSED in its entirety.  I further recommend that the Court decline to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A), because Petitioner has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have 10 (ten) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Paul A.Crotty, United States Courthouse, 500 Pearl Street, Room 735, New York, New York, 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Crotty.  FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298., 300 (2d

26

Cir 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714

F.2d 234, 237-38 (2d Cir. 1983).

Dated:  New York, New York
          February 17, 2009

                                          Respectfully submitted,


                                          DEBRA FREEMAN
                                          United States Magistrate Judge



Copies to:

Hon. Paul A. Crotty, U.S.D.J.

Mr. Jose Fuentes
01-A-5188
Otisville Correctional Facility
P.O. Box 8
Otisville, NY 10963-0008

Robert T. Johnson, Esq.
District Attorney of Bronx County
198 East 161st Street,
Bronx, New York 10451